**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PAMELA MACK,**

    **Plaintiff,**

**-vs-**                    **Case No. 6:13-cv-1525-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I. BACKGROUND

### A. Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on August 3, 2010, alleging an onset of disability on July 1, 2010[1], due to seizures, hip and back pain, anxiety, and chronic obstructive pulmonary disease ("COPD"), and panic attacks. R. 30, 240. Her application was denied

---

[1] Plaintiff amended the alleged onset date to July 1, 2010 from August 2, 2009. R. 56.

initially and upon reconsideration. R. 92-99. Plaintiff requested a hearing, which was held on February 1, 2012, before Administrative Law Judge Kelley Fitzgerald (hereinafter referred to as "ALJ"). R. 50. In a decision dated April 16, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 27-43. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on August 5, 2013. R. 1-7. Plaintiff filed this action for judicial review on October 2, 2013. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was fifty-seven years old on the alleged onset date. R. 56, 188, 195. Plaintiff's date last insured for disability insurance benefits was September 30, 2011. R. 236. Plaintiff had a high school education and attended two years of college. R. 241. She previously worked as a bartender, innkeeper, personal assistant, and childcare attendant. R. 57-60, 84-85, 223.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of fibromyalgia, back pain, seizures, COPD, and memory problems. R. 61-62. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from COPD, epilepsy, and fibromyalgia, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 32, 34. The ALJ found that Plaintiff's medically determinable mental impairments of anxiety related disorders and post-traumatic stress disorder (PTSD), considered singly and in combination, did not cause more than minimal limitation in her ability to perform basic mental work activities and were not severe. R. 33. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work except she was limited to no more than frequently climbing ramps or stairs, balancing, stooping, crouching, kneeling, or crawling; she could not climb ladders, ropes or scaffolds and must avoid even moderate

exposure to hazards such as dangerous machinery and heights; and must avoid concentrated exposure to pulmonary irritants such as dust, fumes, gases, and poor ventilation, and should not drive. Based upon Plaintiff's RFC, the ALJ determined that Plaintiff was capable of performing past relevant work as a companion, bartender, and hotel clerk. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, from July 1, 2010 through the date of the decision. R. 42.

Plaintiff now asserts two main points of error. First, she argues that the ALJ erred by finding that her mental impairments were not severe. Second, she claims the ALJ erred by finding she had the RFC to perform sedentary work contrary to treating doctors' statements. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.   STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

Plaintiff argues that the ALJ erred in finding Plaintiff's mental impairments to be non-severe and in omitting mental limitations from the RFC assessment. She argues that several physicians' opinions supported significant mental limitations, and the ALJ erred by not including these mental limitations in any of her findings – limitations such as moderate difficulties in functioning, agoraphobia, panic, anxiety, tremors, symptoms of posttraumatic stress disorder, dizziness, and depression. R. 32-33.

**The Severity of the Mental Limitations**

The ALJ determined Plaintiff's mental impairments considered singly and in combination did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities and were therefor not severe, thus, she could do her past relevant work and was not disabled. R. 32-33, 41-42. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe. The ALJ based her opinion on the consultative examination report and opinion from Dr. Kirmani, the opinion of the state agency psychological expert, Plaintiff's daily activities, and Plaintiff's generally benign findings on examination. R. 32-33, 37, 39.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The ALJ found that Plaintiff's mental impairments of anxiety related disorders and post-traumatic stress disorder (PTSD) did not cause more than minimal limitation on her ability to perform basic mental work activities and was therefore non-severe. R. 32. The ALJ explained:

> In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1 ). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living. In this area, the claimant has no limitation. She is able to perform activities of self-care independently, prepare simple meals, do light chores, and shop for necessities when someone drives her. Her alleged

> difficulties with activities of daily living have generally been attributed to her physical symptoms, rather than to any mental impairment.
>
> The next functional area is social functioning. In this area, the claimant has no limitation. She visits with family and friends and hosts Bible study weekly. No interpersonal difficulties have been noted on examination.
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. Despite generally normal findings on mental status examinations regarding the claimant's ability to concentrate, she has alleged trouble with memory and concentration related to her medications and residual effects of seizures.
>
> The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. The evidence of record does not reveal any exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.
>
> In October 2010, a State agency psychological consultant conducted a mental assessment and concluded that the claimant's anxiety disorder by history and alcohol abuse were non-severe impairments (Exhibit 11F). I have accorded the consultant's opinion great weight as it is generally consistent with the evidence of record.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are non-severe.

R. 32-33[2] (citation omitted).

Plaintiff argues that several of her mental health providers opined she had certain impairments which support significant mental limitations, but the ALJ did not include these limitations in any of her findings. Plaintiff argues that the ALJ did not apply the correct legal standard requiring the ALJ

---

[2]The ALJ noted "[t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis. R. 33.

to state what weight she gave the mental impairment opinions of several treating physicians, and the ALJ failed to account for these opinions in her findings.

### A. The Opinions of Drs. Pillappa, Thebaud, and Romain

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callaghan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the

-7-

treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The Eleventh Circuit, in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan. 24, 2011), held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)).

Plaintiff points to the records of Drs. Pillappa, Thebaud, Romain, and Hunt as supporting her mental limitations. She argues that the ALJ failed to state "with particularity" what weight she gave to the opinions of Drs. Pillappa, Thebaud, Romain, and did not specifically accept or reject them, but merely mentioned these opinions in passing when summarizing the evidence of record thus, she did not comply with *Winschel*. Plaintiff further argues that the ALJ failed to establish "good cause" for rejecting the opinion of Dr. Hunt, Plaintiff's treating physician, who treated Plaintiff from 2007 to 2011. The Commissioner argues that the ALJ provided substantial evidence supporting her[3] finding that Plaintiff's mental impairments did not cause more than minimal limitations in Plaintiff's ability to work. The Commissioner argues that Plaintiff does not actually point to any "opinions" these physicians offered, but simply highlights diagnosis from these physicians' treatment notes and a

---

[3]The Commissioner repeatedly refers to the ALJ as with male pronouns, when the ALJ in this case is female.

-8-

diagnosis is not an opinion assessing functional limitations, nor does it establish work related limitations stemming from that condition. Doc. 21 at 7 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6(11th Cir. 2005); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition.")).

Plaintiff argues that the ALJ failed to adequately address the opinion of Dr. Pillappa, who Plaintiff asserts "diagnosed" her with chronic PTSD (R. 481-508), depression and difficulty leaving her house, in addition to cervicalgia, tremors, and dizziness[4]. R. 518-30. The ALJ noted that Plaintiff testified she had been seeing Dr. Pillappa every few weeks because she was not doing well. R. 37. As the ALJ found:

> In December 2011, the claimant established a treatment relationship with Mukti Pillappa, M.D., for general medical care. *The claimant reported diagnoses* of COPD, PTSD, fibromyalgia, hypertension, and seizure disorder. Dr. Pillappa referred the claimant to a neurologist for evaluation of her seizure disorder and *to a psychiatrist and therapist for evaluation and treatment of her chronic PTSD*. The claimant was instructed to get regular exercise, eat a high fiber diet, and abstain from smoking. At follow up later in December, the claimant was reminded to start lifestyle modifications, exercise, and low cholesterol diet. She was told to call the neurologist, psychiatrist, and therapist for appointments (Exhibit 20F).
> * * *
> The claimant complained of pain in her neck, back and hands in January 2012. Dr. Pillappa ordered X-rays of the lumbosacral spine secondary to an assessment of arthropathy. Two weeks later, the claimant had not yet gone for the X-rays. February 2012 treatment notes reveal that the X-ray showed mild degenerative disc disease. The claimant reported that she was in a lot of pain, but her insomnia was improving. Dr. Pillappa opined that the claimant's pain was more likely fibromyalgia as opposed to osteoarthritis. The claimant was again instructed to get regular exercise, eat a high fiber diet, and abstain from smoking (Exhibit 22F). Two weeks later, Dr. Pillappa increased the claimant's Cymbalta secondary to fibromyalgia. Recommendations for lifestyle changes were reiterated. The claimant was referred for an X-ray of the cervical spine to assess her cervicalgia (Exhibit 25F).

R. 38-39 (emphasis added). It is clear that Dr. Pillappa, who was not a specialist in psychology or psychiatry as Plaintiff's primary care physician, did not actually "diagnose" Plaintiff's PTSD herself,

---

[4]Plaintiff is not challenging the ALJ's findings concerning Plaintiff's physical impairments.

-9-

but instead (in December 2011) listed Plaintiff's *reported history of diagnosis* of PTSD as "uncontrolled" and noted "patient to call to psychiatrist and therapist." R. 484. Dr. Pillappa noted in the "History of Present Illness" section:

> Lots of issues. Seeing PCP Dr. Hunt down the street for last 3 yrs - now on Blue Card and has [Social Security Disability] hearing next month. PTSD from being in tornado. Depression, trouble leaving house. Has [appointment] with Dr. Hunt next week for med refills. Patient told we don't do chronic pain here.
> Patient states that had abused [alcohol] and quit 3 years ago with Dr. Hunt's help. Was coping from tornado 2008 with that only seizures not controlled. Last one was October 2011. Dilantin level was too high. Hasn't been able to see specialist since no insurance. Now has Blue Card.

R. 486. In the context of the treatment notes above, it is clear that Dr. Pillappa does not make the PTSD diagnosis of Plaintiff's condition, but was recording Plaintiff's report that Dr. Hunt (whom she had seen for three years) had diagnosed Plaintiff with PTSD. R. 486. The ALJ did not err by omitting a discussion the weight she gave Dr. Pillappa's "diagnosis" of PTSD, since she did not diagnose Plaintiff with that condition but was merely noting Plaintiff's reported diagnosis as part of her reported history with Dr. Hunt.

Plaintiff also argues that the ALJ erred in failing to state "with particularity" what weight she gave to the opinion of the diagnosis of Dr. Thebaud from Family Psychiatric Services. Plaintiff stated at the hearing on February 1, 2012 that she had just recently started treatment with the office of psychiatrist Dr. Thebaud on December 29, 2011[5] and January 6, 2012. R. 52. It appears that Plaintiff actually saw Dr. Thebaud's nurse practitioner at the initial visit on December 29, 2011, and the nurse practitioner filled out the detailed "initial evaluation" form. R. 513-17. The nurse practitioner listed as the chief complaint "referred to us by Dr. Pillappa for PTSD; agoraphobia." R. 513. She described the "history of present illness" as Plaintiff's "severe head injury" in 2008 with the "tornados that

---

[5]Plaintiff's administrative counsel was not able to get those records to the ALJ prior to the hearing but the ALJ left the record open until February 21, 2012 to add them. R. 53.

destroyed her home; she began drinking and fell; head injury (= seizure d.o.), transfused and on life support for three days; 1½ years drank every day – D.T.'s/seizure; Dr. Hunt detox'd her; he is currently treating her. 1990 – history of seizure disorder – not controlled; patient is agoraphobic; unable to leave her home since the tornado (3 years ago); take her three hours to work herself [up]." R. 513. In the margins it is noted "history of opiate user detox and history of alcohol abuse and dependence detox." R. 513. Also noted in the "Medical History" section is Plaintiff's report that she had been diagnosed with PTSD and agoraphobia. R. 515. Beneath the pre-printed section, the nurse practitioner wrote in "Dr. Hunt." R. 515. The nurse practitioner listed at the end of the mental status examination diagnosis "panic disorder with agoraphobia, history of alcohol dependence/withdrawal and opioid abuse," and assigned a General Assessment of Functioning ("GAF") score of 54[6]. R. 516. The only time Dr. Thebaud personally saw Plaintiff was on January 26, 2012. He noted her "subjective report" that she "was not doing too well since last visit. [Complains of] frequent pain [headache]; PCP wants her to see pain [management] specialist; [history of] seizure disorder; panic anxiety d/o, [history of] chronic pain;" he assigned a GAF score of 53. R. 512. There are no additional records from Dr. Thebaud, presumably because Plaintiff subsequently began to see a different doctor, Dr. Romain, at Family Psychiatric Services. As the Commissioner points out, the records from Dr. Romain dating from March 19, 2012 to April 18, 2012 were not before the ALJ[7], and were not submitted until after the ALJ's decision. R. 6, 49, 534-35.

The ALJ did discuss the psychiatric evaluation of Plaintiff by Dr. Thebaud's office:

The claimant was evaluated by Kelly Otero, ARNP, in December 2011, in association with Adly Thebaud, M.D., a psychiatrist. A mental status examination was largely

---

[6]Plaintiff asserts that a GAF scoresof 51-60 indicates, "Moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning" that the ALJ failed to credit or discuss.

[7]Plaintiff has not argued that these records should have been considered by the Appeals Council as new and material evidence.

-11-

> unremarkable, other than an anxious mood. The claimant was assessed with panic disorder with agoraphobia and a global assessment of functioning (GAF) score of 54, indicating that she had been experiencing moderate symptoms or moderate difficulty in social, occupational, or school functioning. She was prescribed Paxil and Trazodone. Her Depakote was increased but she was instructed to decrease Valium and discontinue Restoril. At follow-up in January 2012, the claimant stated that she had not been doing well, was still anxious, and could not relax. She complained of frequent back pain, neck pain, and headache. Hydroxyzine was added to her medication regimen (Exhibit 24F).

The ALJ also discussed the findings of the consultative psychiatric examiner, Dr. Kirmani:

> In October 2010, Najib Kirmani, M.D., conducted a consultative psychiatric evaluation of the claimant secondary to allegations of anxiety and panic attacks. Dr. Kirmani noted no significant abnormalities on mental status examination. He indicated that she may have anxiety disorder by history. However, Dr. Kirmani opined that the claimant was able to make personal and social adjustments and had the ability to understand, remember, and carry out instructions (Exhibit 10F). I have accorded this opinion great weigh as it is based on Dr. Kirmani's findings on examination and is generally consistent with the evidence of record.

R. 38. The ALJ ended up giving great weight to Dr. Kirmani's opinion because his findings were based on his examination, consistent with the other evidence of record. R. 39. Dr. Kirmani's opinion in the October 2010 examination report was:

> CURRENT MANIFESTATIONS OF THE MENTAL DISORDER: This individual does not manifest a psychotic reaction. There was no deterioration in personal habits and no impaired ability to relate to this examiner. There were no trophic changes noted and no intellectual deterioration identified. There may be anxiety factors based on her comments.
> \* \* \*
> SUMMARY: As far as this claimant's ability to reason and to make occupational adjustment, the claimant indicates her inability to work due to her medical and psychological problems. She is able to make personal and social adjustments. She has the ability to understand, remember, and carry out instructions. She was considered to be cooperative throughout the interview.

R. 416. The ALJ did discuss the examination and treatment notes of Dr. Pillappa, who was a primary care doctor treating her for her physical impairments, and did not diagnose Plaintiff with a mental condition, but referred her to "psychiatrist or therapist" for mental health treatment. R. 484. The ALJ also appropriately discussed the treatment notes from Dr. Thebaud, who saw Plaintiff only once; the

-12-

notes of the nurse practitioner's mental status examination "were largely unremarkable, other than an anxious mood." R. 38. The ALJ clearly did not err in failing to discuss Dr. Romain's notes since they were not part of the Record when she made the decision.

### B. The Opinion of Dr. Hunt

Like Dr. Pillappa, Dr. Hunt is also a primary care physician and is not a specialist in psychiatry or psychology. He treated Plaintiff from 2007 to 2011, and opined in August 2010 that Plaintiff had a seizure disorder with grand mal seizures that occurred at least three times in the last month. R. 369, 383-91, 409-10, 438-70. Plaintiff contends that Dr. Hunt opined that she "suffer[ed] from a mental impairment that significantly interferes with daily functioning," but, as Plaintiff acknowledges, Dr. Hunt had not referred her to formal psychological/psychiatric treatment, although he had prescribed medications. R. 412.

Plaintiff argues that the ALJ should have credited Dr. Hunt's opinion that Plaintiff was "unable to work" (R. 442) in his November 18, 2010 Physical Residual Functional Capacity Questionnaire, with his diagnosis of seizures, severe anxiety disorder, COPD, and chronic back pain; he opined that her depression, anxiety, and somatoform disorder affected her physical condition; and her experience of pain or other symptoms was severe enough to frequently interfere with attention and concentration needed to perform even simple work tasks[8]. R. 440-44. Dr. Hunt also opined that Plaintiff would need to take frequent unscheduled breaks during an eight hour workday; her impairments would cause her to experience good days and bad days; and she would miss more than four days of work a month due to her impairments or treatment. R. 443. He further opined that her impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. R. 441.

---

[8]Plaintiff also cites certain physical limitations from Dr. Hunt's RFC Questionnaire, but she does challenge the ALJ's findings regarding Dr. Hunt's opinion as to her physical limitations, and these are not relevant to the discussion.

-13-

Plaintiff argues that the ALJ did not establish good cause for giving Dr. Hunt's opinion little weight. R. 38.  In discussing Dr. Hunt's treatment of Plaintiff for her physical impairments, the ALJ found:

> In November 2010, Dr. Hunt, the claimant's primary care physician, reported that she had been diagnosed with seizures, severe anxiety disorder, chronic obstructive pulmonary disease (COPD), and chronic back pain. When asked to describe the claimant's pain, Dr. Hunt did not respond. As for clinical findings, he noted that she feared being alone and only went out with friends to go shopping. He indicated that depression, anxiety, and a somatoform disorder affected the claimant's physical condition. Dr. Hunt opined that the claimant's symptoms would frequently be severe enough to interfere with the attention and concentration needed to perform even simple work tasks, specifically noting that she was fragile emotionally. He further indicated that the claimant was able to walk no more than half of a city block, sit for 20 minutes at one time, and stand for 30 minutes at one time. She could sit less than two hours total and stand less than two hours total in an 8-hour workday. Every 30 minutes, she would have to walk around for about five minutes and would frequently require unscheduled breaks. The claimant would have to elevate her legs at 90 degrees with prolonged sitting, but did not require an assistive device for standing or walking. She could never lift 10 pounds or more. Dr. Hunt asserted that the claimant could rarely look down, stoop, crouch, squat, and climb stairs. She was able to occasionally turn her head left or right, look up, or hold her head in a static position, but could never climb ladders. Dr. Hunt indicated that the claimant had significant limitations with reaching, handling, or fingering, specifically noting that she was fragile emotionally and lacked concentration. He estimated that she would miss more than four days of work per month as a result of her impairments or treatment (Exhibit 13F). In June 2011, Dr. Hunt provided a statement indicating that the claimant's condition as reflected in his November 2010 questionnaire remained the same (Exhibit 18F). Dr. Hunt described significantly limited physical abilities, but he referred only to mental symptoms in this report. Although he is the claimant's primary care physician, Dr. Hunt's opinion is generally inconsistent with the evidence of record, including his own treatment notes and the claimant's admitted activities of daily living. I have therefore accorded this opinion little weight.
> * * *
> In sum, the above residual functional capacity assessment is supported by the claimant's activities of daily living, the opinions of the consultative examiner and State agency consultants, and objective findings on examination. I have accorded the claimant's subjective allegations some benefit of the doubt in limiting her to work at the light exertional level with more postural limitations than described by the State agency medical consultant.

R. 39, 40.

Plaintiff argues that the ALJ did not actually cite any piece of evidence or explain any inconsistencies and only alleged good cause without actually establishing it as required by Eleventh Circuit case law, citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003). She also argues that the ALJ failed to mention evidence that supported Dr. Hunt's opinion, namely the opinions of Drs. Pillappa, Thebaud, and Romain, which was supported by his own records of Plaintiff's headaches, nervousness, PTSD, seizures, feeling weak, not feeling well, not sleeping enough, and needing Xanax and Valium medications. R. 369, 383-98, 438-70. As discussed above, the ALJ properly discussed the treatment notes of Dr. Pillappa and Dr. Thebaud, and did not have before her the treatment notes or opinion of Dr. Romain. The treatment notes of these three doctors did not support the severity of the mental limitations that Dr. Hunt opined existed.

As to the ALJ's discounting of Dr. Hunt's opinion based on his own treatment records, the ALJ's discussion of the severity of Plaintiff's mental impairment symptoms was completely subjective, as reported to Dr. Hunt, and the ALJ essentially made a credibility determination of Plaintiff's statements regarding her impairments.

In considering a Plaintiff's subjective complaints, the ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the symptoms alleged, the ALJ must apply the Eleventh Circuit's three-part standard which requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can

be reasonably expected to give rise to the alleged symptoms. *Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

>In this case, the ALJ found:
>
>After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
>There are several inconsistencies between the claimant's allegations and other evidence of record. First, the claimant's activities of daily living are inconsistent with her own allegations of significant functional limitations, but are fully consistent with the residual functional capacity described above. Although the claimant testified that she is seeing the neurologist for her seizures and fibromyalgia, Dr. Corak's neurology treatment notes fail to mention fibromyalgia. She testified to side effects of her medication, but treatment notes generally revealed that the claimant was tolerating her medication regimen well. Further, findings on physical and mental examinations have been generally benign, inconsistent with the claimant's allegations of pain and anxiety of disabling severity. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the infonnation provided by the claimant generally may not be entirely reliable.
>
>Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review in this case reveals no restrictions recommended by the treating physician.
>
>The medical evidence of record reveals that on July 11, 2010, the claimant sought emergency treatment secondary to a fall in which she hit the back of her head. Her Dilantin level was found to be high. She was assessed with overmedication (Dilantin), seizure disorder, fall with head laceration, concussion, and a sprained ankle (Exhibit 7F).
>
>In August 2010, Owen Hunt, M.D., the claimant's primary care physician, reported that she had a seizure disorder. She continued to have occasional seizures, despite taking Dilantin, and continued to use alcohol. Dr. Hunt indicated that the claimant experienced grand mal seizures and that her Dilantin level was too high. He noted that she was not compliant with prescribed treatment. She had at least three seizures in the last three months. Although she was referred to a neurologist, she had not seen him yet (Exhibit 8F). Dr. Hunt also indicated that the claimant suffered from anxiety, which significantly interfered with her daily functioning. However, she had not been referred for formal psychiatric or psychological treatment (Exhibit 9F). The claimant continued

> to receive regular medical care from Dr. Hunt through 2010 and 2011 (Exhibits l 2F, l 6F, and l 7F). I have accorded little weight to Dr. Hunt's opinion that the claimant's anxiety significantly interfered with her daily functioning, as it is vague and is unsupported hy specific findings in his treatment record.

R. 37-38.

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ cited specific evidence of Plaintiff's activities of daily living in support of the finding that she had no limitations in that area or in social functioning: she no problems with personal care, could prepare meals, do light chores, and shop; she visited with family and friends and was able to host a weekly Bible study. R. 33, 73, 256-59, 284, 417-18. The ALJ also noted Plaintiff had generally normal findings on mental status examinations and only mild limitations in concentration. R. 33, 374, 395-96, 492, 516. The ALJ based her credibility determination on inconsistencies between Plaintiff's allegations, her activities of daily living, her representations concerning her actual impairments (and lack of the treatment by the neurologist for fibromyalgia), as well as other evidence of record. Accordingly, the ALJ's treatment of Dr. Hunt's opinion on the severity of Plaintiff's mental impairments was based on substantial evidence in the record.

**C. Opinion of the non-examining state agency psychologist**

Plaintiff argues that the ALJ erred in according "great weight" to the opinion of the non-examining state agency psychological consultant because it was inconsistent with the "opinions" of Drs. Hunt, Pillappa, Thebaud, and Romain. Given the disposition on Plaintiff's other points, and the Court's finding that the ALJ's opinion was based on substantial evidence concerning Plaintiff's mental impairments, the ALJ's decision to give the opinion of the state agency reviewing physician great weight was also not in error.

## IV.  CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** this 28th day of February, 2015.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record